UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ST. ISIDORE FARM LLC, and Idaho limited liability company; and GOBERS, LLC., a Washington limited liability company,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>COEUR D'ALENE TRIBE OF INDIANS, a federally recognized Indian tribe, JOHN DOES 1 - 10, each of which are Members of the Coeur d'Alene Tribe of Indians,<br><br>　　　　　　　　　Defendants. | Case No. 2:13-CV-00274-EJL<br><br>**ORDER** |

　　　　On July 16, 2013, this Court entered an Order extending the temporary restraining order in this matter and requested expedited briefing on the motion to dismiss (Dkt. 31). Expedited briefing and related declarations were filed by Plaintiffs as well as motions to strike the declarations filed by Defendants. Responses and replies as well as supplemental declarations have been filed by both sides. Supplemental authority was filed by Defendants (Dkt. 53). A motion to strike the supplemental declarations of

**ORDER - 1**

Plaintiffs' experts Mr. Hess and Mr. Monks was filed by Defendants (Dkt. 55). A response to the most recent motion to strike was filed by Plaintiffs.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

## FACTUAL BACKGROUND

Plaintiffs St. Isidore Farm, LLC and Gobers, LLC seek this Court to enjoin and restrain the Coeur d'alene Tribe of Indians (the "Tribe") and the Coeur d'Alene Tribal Court from levying civil fines, placing liens on the real property owned by Plaintiff St. Isidore Farm LLC and pursuing criminal actions against the Plaintiffs for the land application of domestic sewage sludge (septage) to non-public contact sites from which there is no discharge into waterways. Plaintiffs allege they are in compliance with all federal and state regulations for the discharge of septage and received approval from the Idaho Department of Environmental Quality for human waste application on the non-Indian fee land.

It is undisputed that the Tribe adopted a resolution on March 6, 2013, enacting Chapter 57 of the Coeur d'Alene Tribal Code entitled "Tribal Waste Management Act" which appears to prohibit the septage disposal process being used by Plaintiffs. Plaintiffs

ORDER - 2

argue the Tribe's more restrictive discharge provisions are not applicable to non-Indian land owned by non-Indians located within the boundaries of the Coeur d'Alene Reservation. Plaintiffs allege they are being fined by the Tribe for their actions and are facing criminal liability as well as liens being placed on their property for not being in compliance with the Tribe's laws and regulations. Plaintiffs filed a motion for injunctive relief in this Court to enjoin the Defendants from attempting to enforce Tribal ordinances against them. The Tribe filed suit in Tribal Court against the Plaintiffs on June 3, 2013 under case number CV-SC-2013-0115. Plaintiffs have appeared and answered the Complaint in Tribal Court, but contest the Tribal Court's jurisdiction over this matter.

Defendants have filed declarations indicating that no criminal prosecutions have been initiated against Plaintiffs. Nor is there any evidence the Tribe intends to place a lien on Plaintiffs' real property. Defendants have filed declarations by Scott Fields, Cameron Heusser, Tom Briggs and Callie Ridolfi in support of their motion to dismiss alleging that the septage dumping by Plaintiffs is a risk or threat to the health and welfare of tribal members who may harvest or eat wild game that have grazed on the property and is a risk or threat to the water quality within the Coeur d'Alene Reservation through surface runoff and percolation of the septage into the ground water.

Plaintiffs filed motions to strike the declarations filed by Defendants and have submitted their own declarations of certain experts regarding whether or not there is a real threat to the health and welfare of the Tribe based on the activities of Plaintiffs.

## ANALYSIS

**ORDER - 3**

The Court has reviewed the record in this matter and has determined that jurisdiction is a critical prerequisite to resolving the merits of the request for a preliminary injunction and the motion to dismiss.  Defendants maintain in their response to the motion for preliminary injunction and in their motion to dismiss that Plaintiffs have not exhausted tribal court jurisdiction and are therefore prevented from seeking relief in federal court.  Plaintiffs respond that the Tribe has not carried its burden in establishing the health or welfare of the Tribe is at stake in this particular case, so the exhaustion requirement does not apply as the jurisdiction of the Tribe does not plainly exist.  The Tribe argues it does not have to prove a direct effect, but only that the Plaintiffs' activities "threaten" the health and welfare of the Tribe to establish that jurisdiction lies with the Tribe.

Generally, the parties do not appear to disagree with the state of the law, just the application of the facts to the law. The law regarding exhaustion and the health and safety exception has recently been addressed in the District of Idaho by Judge Winmill in his recent decision in *Evans v. Shoshone-Bannock Landuse Policy Commission*, Civil Case 4:12-cv-417-BLW, 2012 WL 6651194, currently on appeal with the Ninth Circuit.  While the *Evans* opinion is not binding on this Court, the Court finds Judge Winmill's summary of the law to be persuasive as to the analysis this Court should undertake.  The Court incorporates the summary of law from the *Evans* case pp. *2 -*3:

**Exhaustion**

The Supreme Court has mandated the exhaustion of tribal remedies

**ORDER - 4**

as a prerequisite to a federal court's exercise of its jurisdiction: "[E]xhaustion is required before such a claim may be entertained by a federal court." *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 851-53 (1985). This is true even for non-Indian defendants sued in Tribal Court who allege that the proceedings exceed Tribal sovereign jurisdiction. *Burlington Northern R. Co. v. Crow Tribal Council*, 940 F.2d 1239, 1244 (9th Cir. 1991). In *National Farmers Union,* the Supreme Court recognized that Tribal Courts are capable of resolving difficult jurisdictional issues. 471 U.S. at856–57. That decision teaches that Tribal Courts (1) should be afforded a "full opportunity" to determine their own jurisdiction, (2) are capable of "rectifying errors," (3) will create a more complete record for eventual federal court review, and (4) will provide federal courts with the benefit of tribal court "expertise." *Id*. This is particularly true when litigation concerns the validity of a tribal ordinance – the "tribe must itself first interpret its own ordinance and define its own jurisdiction." *Burlington Northern*, 940 F.2d at 1246. "The requirement of exhaustion of tribal remedies is not discretionary; it is mandatory." *Id*. at 1245.

However, the Supreme Court has recognized four exceptions to the exhaustion requirement:
(1) when an assertion of tribal court jurisdiction is "motivated by a desire to harass or is conducted in bad faith"; (2) when the tribal court action is "patently violative of express jurisdictional prohibitions"; (3) when "exhaustion would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction"; and (4) when it is "plain" that tribal court jurisdiction is lacking, so that the exhaustion requirement "would serve no purpose other than delay."

*Elliott v. White Mountain Apache Tribal Court*, 566 F.3d 842, 847 (9th Cir. 2009)
(quoting *Nevada v. Hicks*, 533 U.S. 353, 369 (2001)).

To determine whether it is "plain" that tribal jurisdiction is lacking, the Court determines whether jurisdiction is colorable" or "plausible." *Id.* at 848. "If jurisdiction is 'colorable' or plausible,' then the exception does not apply

**ORDER - 5**

and exhaustion of tribal court remedies is required." *Id.*

**Is Tribal Court Jurisdiction Plausible?**

Plaintiffs argue that the fourth exception applies because it is plain that the Tribal Court lacks jurisdiction. If jurisdiction is plausible, exhaustion is required. Resolving this issue requires reviewing the scope of Tribal Court jurisdiction.

Once Tribal land is converted into fee simple, the Tribe loses plenary jurisdiction over it. *Plains Commerce Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316, 328 (2008). When the fee simple title is conveyed to a non-Indian, the Tribe loses "regulatory jurisdiction over the use of the land by others." *Id.* at 329. As a general rule, then, the Tribe has "no authority itself, by way of tribal ordinance or actions in the tribal courts, to regulate the use off of fee land." Id.

There are two exceptions to this general rule. Tribes may regulate non-Indians on fee lands when (1) the non-Indians consent, or (2) when their "conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Montana v. United States*, 450 U.S. 544 (1981). There is no claim of consent here; thus, the only issue is whether there is a plausible case that the second exception applies.

The second exception is to be applied in a "limited" manner, and the burden of establishing it falls on the Tribe. *Plains Commerce*, 554 U.S. at 330. "[T]he tribe may quite legitimately seek to protect its members from noxious uses that threaten tribal welfare or security, or from nonmember conduct on the land that does the same." *Id.* at 336. However, the conduct of the non-Indians "must do more than injure the tribe, it must 'imperil the subsistence' of the tribal community." *Id.* at 341. To apply this exception "the tribal power must be necessary to avert catastrophic consequences." *Id.*

(quoting F. Cohen, *Handbook of Federal Indian Law* § 4.02[3][c], at 232, n. 220).

One commentator has wondered "how anyone could conceivably fulfill" the catastrophic consequences requirement, and concluded that "it is extremely likely that not a single case in the history of the

**ORDER - 6**

>post-*Montana* jurisprudence would have risen to the level of 'catastrophic consequences' such that it would have granted tribal jurisdiction." Ennis, *Implicit Divestiture and the Supreme Court's Reconstruction of the Indian Canons*, 35 Vt.L.Rev. 623, 648 (2011); *see also* Sweeney, *The Bank Began Treating Them Badly: Plains Commerce, The Supreme Court, and the Future of Tribal Sovereignty*, 33 Am.Indian L.Rev. 549, 573 (2009) (describing the *Plains Commerce* standard as an "absurdly high standard [that] essentially vitiat[es] the possibility of its use").
>
>Importantly, however, the *Plains Commerce* decision was not about zoning – it was about land sales. *Plains Commerce* made it very clear that "conduct taking place on the land and the sale of the land are two very different things." *Plains Commerce*, 554 U.S. at 340. In summarizing the holdings of past cases that did discuss the Tribe's power to regulate *conduct* on the land as opposed to the *sale* of land, *Plains Commerce* did not use the strict "catastrophic" language, but recognized a different test: "Put another way, certain forms of nonmember behavior, even on non-Indian fee land, may sufficiently affect the tribe as to justify tribal oversight. While tribes generally have no interest in regulating the conduct of nonmembers, then, they may regulate nonmember behavior that implicates tribal governance and internal relations." *Id*. at 335.

**Facts in the Case at Bar**

The parties in this case dispute whether Tribal jurisdiction is "plainly lacking." Plaintiffs argue Tribal jurisdiction is lacking as their activities do not "imperil the subsistence" of the tribal community as Defendants provided no hard evidence of a health and safety risk.  Defendants argue the Court should consider the viewpoint of the Tribe as to whether or not a threat exists and an established threat satisfies the jurisdictional requirements for the health and safety exception created in *Montana v. United States*, 450 U.S. 544 (1981).

While exhaustion is not optional, it is a question of law as to whether the health and safety exception requirements have been satisfied to conclude jurisdiction in Tribal Court is at least "plausible."

The Defendants are correct that *Montana* granted the Tribe "inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens *or* has some direct effect on the political integrity, the economic security, or the health and welfare of the tribe." *Id.* at 566 (emphasis added). This quote appears to allow the Tribe jurisdiction if it can establish the conduct at issue at least "threatens" the health and welfare of the Tribe.  Plaintiffs argue unsubstantiated risks or threats should not be sufficient for the Tribe to "plainly" establish jurisdiction and the alleged threats do not rise to the level of imperiling the subsistence' of the tribal community in this particular case.

The declarations filed by Defendants can be summarized as follows:

1.  Callie Ridolfi, Environmental Engineer.  Prepared threat assessment and concluded the land application activities of Plaintiffs pose a threat to the health and welfare of the Tribe: 1) if released into the surface water or ground water; 2) air quality may be negatively impacted by airborne particulates, pathogens or odors; 3) septage may contain heavy metals that could contaminate soils, surface waters and biota; 4) game animals could become exposed to pathogens and other contaminants; and 5) septage wastes contaminated with toxic substances and pathogens pose a threat to people who access the site.

**ORDER - 8**

The Court notes from Ms. Ridolfi's report that in April 2013, the site was approved by the Idaho Department of Environmental Quality for the land application of septage. Therefore, the Court must assume the Plaintiffs satisfied the state requirements. Ms. Ridolfi's report talks generally about septage, but indicates that the septage at issue has not been characterized as part of her report. Ms. Ridolfi does not indicate that the "alleged" threats have occurred, only that the activities of disposing of septage can pose a threat.

2. Cameron Heusser, Tribe's Wildlife Program Manager. He is familiar with the real property at issue in this case and indicates deer, elk, moose, bear and turkeys frequently inhabit and use the property. He is also familiar with the Tribe's hunting regulations. The property has minimal barbed wire fencing that does not deter wildlife from entering property. He believes members of the Tribe will harvest wildlife that has probably grazed upon the property.

3. Scott Fields, Tribe Water Resource Program Manager. The Plaintiffs' septage is untreated and untested. The septage is a risk to the water quality of the reservation as there is a risk of dangerous contaminants entering the ground water and potential runoff from the application fields. Mr. Fields did not evaluate the septage for contaminants.

4. Tom Briggs, Professional Engineer and hydrogeologist. The septage application poses risks to the health and welfare of the Tribe and/or its members: 1) septage is untreated and untested and may contain contaminants; 2) property is at risk for contaminants running off and migrating into the surface water system of the North Fork Rock Creek and Plummer Creek watersheds; 3) surface water runoff is a threat to

**ORDER - 9**

discharge into drainages used as drinking water sources or watering sources for fish and wildlife; 4) grazing animals are at risk for contact with contaminants and being harvested by Tribe members which creates a potential threat to human health. Mr. Biggs did not specifically analyze the septage at issue in this case.

     5. Alfred Nomee, Tribe member and on Tribal Council. Considers deer, elk, and moose grazing and bedding down in area of septage disposal a health and safety threat to Tribal members who harvest such animals.

     6. Vince Peone, Tribe member and wildlife technician for Tribal Natural Resources Department. He is familiar with the wildlife on reservation and with the hunting of such animals by Tribe members. He believes there is a substantial health risk to Tribe members who harvest and dress the wild animals that have been in contact with human waste has been spread or injected.

     The declarations filed by Plaintiffs regarding risks to the Tribe can be summarized as follows:

1. Thomas Hess, PH.D., licensed engineer, professor of Biological & Agricultural Engineering Department at University of Idaho.  Opines that the application of septage on the property at issue poses neither a threat nor harm to the health and welfare of Tribe.  He conducted analyses of specific septage at issue and soils and determined contents of contaminants were as such low levels as no risk was posed.

2. John Monks, Professional Geologist.  Opines that septage reclamation activities do not pose a significant threat to human and ecological health via ground water exposure pathways.

This is a close call for the Court as the Court in not in a position to weigh the credibility of the declarants.  Instead, before the Court can determine the merits of the alleged threats, the Court must determine whether the Tribe has carried its burden to establish that there is "plausible" jurisdiction for the Tribal Court to be the first court to determine whether or not jurisdiction is proper with the Tribal Court based on the health and safety exception.

In *Dish Network Service v. Laducer*, ___ F. 3d ___. 2013 SL 3970245, *5 (8th Cir. Aug. 5, 2013), the jurisdiction issue was based on the contract exception not the health and safety exception, but the Eighth Circuit held:

> Our court has not discussed how "plain" the issue of tribal court jurisdiction needs to be before the exhaustion requirement can be waived, but the Supreme Court indicated in Strate that the bar is quite high. According to the Court, the requirement to exhaust should be waived only when the issue of tribal court jurisdiction is invoked for "no other purpose than delay." 520 U.S. at 459 n.14.

**ORDER - 11**

In this case, the Court finds the request by Defendants for the Plaintiffs to exhaust Tribal Court jurisdiction first or at least let the Tribal Court be the first court to determine if it plainly has jurisdiction is not invoked as a delay tactic. Nor is the argument frivolous that the jurisdiction with Tribal Court is "plausible."

The Tribe argues the threat analysis must be "viewed through the lens of the Tribe in Indian country, not through the lens of the world outside of Indian country." This appears to be an overstatement of the law. Whether or not the threat exception applies must be analyzed objectively based on all the facts available. A few persons saying they feel their health may be threatened if they harvest wildlife that has been on the property at issue is not sufficient to satisfy the legal requirements of jurisdiction. We live in an age of science and technology that allows hard evidence to be presented and considered by the Court. If a threat is not based in facts, but mere speculation, it may not satisfy the *Montana* exception requirements.

Based on the record before this Court and the declarations filed by both sides, the Court finds there is some evidence that the health and safety of the Tribe may be threatened. Therefore, jurisdiction with the Tribal Court is "plausible." This Court finds it must defer to the Tribal Court to first make the call regarding the health and safety exception's applicability. "Nonetheless, both the Supreme Court and this [Ninth] circuit have held that non-Indian defendants must exhaust tribal court remedies before seeking relief in federal court, even where defendants allege that proceedings in tribal court exceed tribal sovereign jurisdiction." Burlington N. R. Co. v. Crow Tribal Council, 940 F.2d

1239, 1244 (9th Cir. 1991) *(citing National Farmers Union,* 471 U.S. at 856-57, 105 S.Ct. at 2453-54; *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 16, 107 S.Ct. 971, 976, 94 L.Ed.2d 10 (1987); *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221 (9th Cir.1989). The Tribal Court has the necessary expertise in such matters to apply the law of the Supreme Court. *Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 856-57 (1985).

As a matter of law, after having satisfied the threshold question of plausible jurisdiction based on a threat to the health and welfare of the Tribe being presented, the Tribal Court must weigh all the evidence and the credibility of the declarants to determine if does or does not have jurisdiction over the regulation of Plaintiffs' activities on non-Indian land as it is still the Tribe's burden to prove the second *Montana* exception applies. *Plains Commerce*, 554 U.S. at 330. The "tribe must itself first interpret its own ordinance and define its own jurisdiction." *Burlington N.R.R. Co., v. Crow Tribal Council*, 940 F.2d 1239 (9th Cir. 1991). If the Tribe finds jurisdiction is plainly lacking as the threat to the health and safety does not rise to the level of imperiling the existence of the Tribe, Plaintiffs are granted leave to move to reopen this case.

## ORDER

Being fully advised in the premises, the Court hereby orders that:

1. Defendants' Motion to Dismiss (Dkt. 20) is GRANTED as Plaintiffs must first

**ORDER - 13**

exhaust their claims in Tribal Court before coming to Federal Court. This matter is administratively terminated with leave granted to the parties move to reopen this matter if the Tribal Court determines it does not have jurisdiction over the actions.

2. Plaintiffs' Motions to Strike (Dkts. 32, 34, 36, and 38) are DENIED.

3. Defendant's Motion to Strike (Dkt. 55) is DENIED AS MOOT.

4. Plaintiffs' Motion for Preliminary Injunction (Dkt. 3) is DENIED WITHOUT PREJUDICE.

**SO ORDERED.**

DATED: **September 5, 2013**

Honorable Edward J. Lodge
U. S. District Judge